UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| RONALD ASHLEY | CIVIL ACTION NO: |
| | 3:13-CV-00074-JBA |
| v. | |
| | |
| UNITED NATURAL FOODS, INC. | FEBRUARY 28, 2013 |

## AMENDED COMPLAINT

**FIRST COUNT**: (Violation of the Connecticut Fair Employment Practices Act, as amended, Conn. Gen. Stat. § 46a-60 et seq. ("CFEPA"))

1. The Plaintiff Ronald Ashley resides at 89 Walnut St., Fall River, Massachusetts.

2. The Plaintiff's date of birth is November 7, 1967 and he is an African-American male.

3. The Defendant, United Natural Foods, Inc. (hereinafter "UNFI"), has its corporate office at 313 Iron Horse Way, Providence, Rhode Island.

4. Mr. Ashley was employed out of UNFI's satellite office located at 260 Lake Road, Dayville, Connecticut.

5. At all times relevant hereto, the Defendant employed at least fifteen (15) employees in the State of Connecticut.

6.  The Plaintiff was hired by the Defendant as a Driver on or about March 23, 2005 and remained employed with the Defendant until it terminated his employment on or about May 19, 2011.

7.  Of the professional drivers employed out of the Defendant's Dayville office, African-Americans represented a substantial minority.

8.  At all times relevant hereto, the Plaintiff has been qualified to perform the duties of his position as a driver for the Defendant.

9.  At all times relevant hereto, the Plaintiff performed the duties of his position in a satisfactory manner.

10. The Plaintiff received an initial written performance review after his first six (6) months of employment.

11. Additionally, the Plaintiff received written performance reviews for each year that he was employed by the Defendant.

12. Each performance review was positive in terms of recognizing the satisfactory work that Mr. Ashley performed for UNFI and each resulted in an increase in monetary compensation.

13. For years 2005, 2006, 2007, 2008 and 2009, the Plaintiff received perfect or near perfect ratings for the category within the performance review entitled "interpersonal skills."

{!00801692.DOC; v.}2

SUISMAN, SHAPIRO, WOOL, BRENNAN, GRAY & GREENBERG, P.C.   THE COURTNEY BUILDING, SUITE 200, 2 UNION PLAZA, POST OFFICE BOX 1591
NEW LONDON, CONNECTICUT 06320   TEL. (860) 442-4416   JURIS NO. 62114

14. The last performance review Mr. Ashley received was dated May 7, 2010 and it was likewise positive in terms of evaluating his overall performance. However, the May 7, 2010 review notes problems, for the first time, with the category entitled "interpersonal skills." Specifically, a deduction was made based upon "respect for and taking direction from managers."

15. The Plaintiff suffered a work related injury to his knee in the fall of 2010 necessitating surgery. The Plaintiff was afforded leave under the workers' compensation statutes which began on or about October 30, 2010.

16. After consulting with his treating physicians, it was the Plaintiff's intention and expectation to return to work at full-capacity in mid-April 2011.

17. Prior to the Plaintiff's anticipated return to full capacity, his treating physicians cleared him to return to light duty work with the Defendant in February and again in March 2011. After each occasion where Mr. Ashley visited his treating physicians in February and March, he forwarded paperwork to the Defendant indicating his capacity, as determined by his physicians, to perform light duty work. On each occasion, Mr. Ashley's inquiries were ignored by the Defendant, while upon information and belief certain Caucasian employee-drivers were offered light duty work during the same period.

{!00801692.DOC; v.}3

SUISMAN, SHAPIRO, WOOL, BRENNAN, GRAY & GREENBERG, P.C.   THE COURTNEY BUILDING, SUITE 200, 2 UNION PLAZA, POST OFFICE BOX 1591
NEW LONDON, CONNECTICUT 06320   TEL. (860) 442-4416   JURIS NO. 62114

18. Mr. Ashley received correspondence from the Defendant dated April 11, 2011 wherein the Defendant indicated its awareness of his expectation of returning to work and the requirement that he pass a functional capacity exam.

19. There was no indication in the written correspondence from the Defendant in April 2011 which would have suggested any resolution other than Mr. Ashley's return to work upon passing a functional capacity exam.

20. The Defendant, through its human resources department, confirmed in a telephone conversation with the Plaintiff in April 2011 that the anticipated resolution was his return to work upon passing a functional capacity exam.

21. Mr. Ashley was then abruptly terminated from employment by letter from the Defendant dated May 19, 2011.

22. The Defendant's cited reason for terminating Mr. Ashley's employment was based on alleged failure to disclose certain Massachusetts criminal convictions on his employment application dated March 4, 2005.

23. The Defendant's cited reason for terminating Mr. Ashley's employment was pretext for race discrimination and retaliation for the Plaintiff's opposition to discriminatory treatment from employees, agents and/or representatives of the Defendant as follows.

{!00801692.DOC; v.}4

SUISMAN, SHAPIRO, WOOL, BRENNAN, GRAY & GREENBERG, P.C.   THE COURTNEY BUILDING, SUITE 200, 2 UNION PLAZA, POST OFFICE BOX 1591
NEW LONDON, CONNECTICUT 06320   TEL. (860) 442-4416   JURIS NO. 62114

24. Each applicant for employment, including Mr. Ashley, was required to sign an authorization for the Defendant to conduct a full criminal background check prior to employment.

25. The Plaintiff did in fact authorize a full pre-hire criminal background check to be conducted by the Defendant.

26. Upon information and belief, the Defendant did in fact conduct a full criminal background check of the Plaintiff prior to his date of hire and would therefore have been privy to Mr. Ashley's complete criminal history.

27. The Defendant then conducted a subsequent criminal background check of the Plaintiff immediately prior to his expected return to work in May 2011, approximately six years after his application/date of hire.

28. The Defendant conducted this subsequent criminal background check without notice to the Plaintiff and for the sole purpose of finding a way to mask its discrimination/retaliation against the Plaintiff for having opposed discrimination as follows:

   a. The Plaintiff complained several times to management and human resources, and specifically to his direct supervisor Paul Bieger, during calendar years 2008 and 2009, regarding his co-workers and their persistent racial jokes targeting African Americans in his presence, the circulation of Klu Klux Klan pictures and paraphernalia amongst the drivers

{!00801692.DOC; v.}5

SUISMAN, SHAPIRO, WOOL, BRENNAN, GRAY & GREENBERG, P.C.   THE COURTNEY BUILDING, SUITE 200, 2 UNION PLAZA, POST OFFICE BOX 1591
NEW LONDON, CONNECTICUT 06320   TEL. (860) 442-4416   JURIS NO. 62114

and left for him to observe as well as generally demeaning and crass racial commentary in his presence.

b. In January or February 2010, a confederate flag icon was placed on the Plaintiff's driver's vehicle report ("DVR") in his assigned vehicle by one of his co-workers. Mr. Ashley complained immediately to management that this racial harassment could no longer be tolerated ("2010 complaint").

c. The Plaintiff met on one or more occasions with UNFI officials, agents, employees and/or representatives to voice his concerns with racial discrimination/harassment against him by co-workers.

29. Upon information and belief, no employees were disciplined in any way by the Defendant for the above-described conduct.

30. The Plaintiff's working conditions changed palpably for the worse after his 2010 complaint of race discrimination.

31. Immediately after his 2010 complaint, the Defendant instituted race sensitivity training whereby co-workers were permitted to further harass Mr. Ashley and place blame upon him for the necessity of training.

32. Only after Mr. Ashley's 2010 complaint, did his supervisor give him a negative rating for "interpersonal skills" on his performance evaluation, when up until the point of his complaint, he received high scores in that category.

33. A period of approved leave separated the Plaintiff's 2010 complaint of race discrimination and his anticipated return to work in April/May 2011.

34. The temporal proximity between the Plaintiff's 2010 complaint of race discrimination followed immediately by a negative rating on "interpersonal skills" and abrupt termination from employment upon return from leave raises an inference of discrimination.

35. The Defendant's manufactured reason for terminating the Plaintiff's employment was pretextual and for the sole purpose of covering its discriminatory/retaliatory intent.

36. The Defendant's adverse employment actions against the Plaintiff, culminating in its decision to terminate his employment, were based upon Mr. Ashley's adamant opposition to pervasive and severe race discrimination.

37. The Plaintiff was discharged from employment based on race discrimination and retaliation for opposing said discrimination in violation of the Connecticut Fair Employment Practices Act, as amended, Conn. Gen. Stat. § 46a-60 et seq. ("CFEPA").

38. The Plaintiff has satisfied all the procedural and administrative requirements to bring a claim in superior court in that:

{!00801692.DOC; v.}7

SUISMAN, SHAPIRO, WOOL, BRENNAN, GRAY & GREENBERG, P.C.   THE COURTNEY BUILDING, SUITE 200, 2 UNION PLAZA, POST OFFICE BOX 1591
NEW LONDON, CONNECTICUT 06320   TEL. (860) 442-4416   JURIS NO. 62114

(a).  the Plaintiff filed a timely written charge of discrimination/retaliation with the State of Connecticut Commission on Human rights and Opportunities (CHRO) on or about October 20, 2011;

(b).  the Plaintiff received a release of jurisdiction from the CHRO pursuant to Section 46a-101 of the Connecticut General Statutes on November 2, 2012; and

(c).  the Complaint in this matter was filed within ninety (90) days from the Plaintiff's receipt of the CHRO's "release of jurisdiction."

**SECOND COUNT**: (Violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e et seq.)

1-38.  Paragraphs 1 through 38 of the First Count are hereby realleged and incorporated herein as paragraphs 1 through 38 of this Second Count.

39.  The Plaintiff was discharged from employment based on race discrimination and retaliation for opposing said discrimination in violation of Title VII of the Civil Rights Act of 1964.

40.  The Plaintiff has satisfied all the procedural and administrative requirements to bring a claim in superior court in that:

(a).  the Plaintiff filed a timely written charge of discrimination/retaliation with the Equal Employment Opportunity Commission ("EEOC") on or about October 20, 2011;

{!00801692.DOC; v.}8

SUISMAN, SHAPIRO, WOOL, BRENNAN, GRAY & GREENBERG, P.C.   THE COURTNEY BUILDING, SUITE 200, 2 UNION PLAZA, POST OFFICE BOX 1591
NEW LONDON, CONNECTICUT 06320   TEL. (860) 442-4416   JURIS NO. 62114

(b). the Plaintiff received a "notice of right to sue" from the EEOC pursuant to federal law on November 1, 2012; and

(c). the Complaint in this matter was filed within ninety (90) days from the Plaintiff's receipt of the EEOC's notice of right to sue.

**THIRD COUNT**: (Breach of contract)

1-38. Paragraphs 1 through 38 of the First Count are hereby realleged and incorporated herein as paragraphs 1 through 38 of this Third Count.

39. On or about February-May 2011, the Defendant, by its words, writings, actions and/or conduct promised and/or agreed to return the Plaintiff to full-time employment as a driver with UNFI upon the Plaintiff's substantiation of the fact that he was physically able to work.

40. The Defendant, by its words, writings, action and/or conduct, further promised that no basis arising on or before February-May 2011 would be used against the Plaintiff in terms of his employment with the Defendant.

41. The Plaintiff accepted the conditions imposed by the Defendant to return to employment as a driver of UNFI and made substantial efforts to accomplish the same.

42. The Plaintiff and Defendant were parties to a contract whereby the Plaintiff would return to work for the Defendant on or about February-May 2011.

SUISMAN, SHAPIRO, WOOL, BRENNAN, GRAY & GREENBERG, P.C.   THE COURTNEY BUILDING, SUITE 200, 2 UNION PLAZA, POST OFFICE BOX 1591
NEW LONDON, CONNECTICUT 06320   TEL. (860) 442-4416   JURIS NO. 62114

43. The Defendant terminated the Plaintiff on or about May 19, 2011 for reasons unrelated to his physical ability to return to work and in so doing, breached the contract between the parties.

44. The Plaintiff will be caused to suffer damages as a result of the Defendant's breach of contract.

WHEREFORE, the Plaintiff prays for relief as follows:

1. Compensatory Damages (back pay and front pay);

2. Emotional Distress;

3. Punitive Damages;

4. Attorneys' Fees;

5. Costs;

6. Interest; and

7. Such other relief as the court deems just and appropriate.

THE PLAINTIFF

BY: _____
Bryan P. Fiengo
Suisman, Shapiro, Wool, Brennan,
Gray & Greenberg, P.C.
2 Union Plaza, Suite 200
P.O. Box 1591
New London, CT 06320

{!00801692.DOC; v.}10

SUISMAN, SHAPIRO, WOOL, BRENNAN, GRAY & GREENBERG, P.C.   THE COURTNEY BUILDING, SUITE 200, 2 UNION PLAZA, POST OFFICE BOX 1591
NEW LONDON, CONNECTICUT 06320   TEL. (860) 442-4416   JURIS NO. 62114

## **CERTIFICATION**

This is to certify that the foregoing amended complaint has been electronically filed and sent by regular mail, postage prepaid, this 28th day of February 2013, to the following counsel of record:

Morris R. Borea
Rome McGuigan, P.C.
One State Street
13th Floor
Hartford, CT 06103

Amy Pocklington
McGuireWoods LLP
One James Center
901 East Cary Street
Richmond, Virginia 23219

/s/
_____
Bryan P. Fiengo

{!00801692.DOC; v.}11

SUISMAN, SHAPIRO, WOOL, BRENNAN, GRAY & GREENBERG, P.C.   THE COURTNEY BUILDING, SUITE 200, 2 UNION PLAZA, POST OFFICE BOX 1591
NEW LONDON, CONNECTICUT 06320   TEL. (860) 442-4416   JURIS NO. 62114